## UNITED STATES v. OLD DOMINION WAREHOUSE, Inc.

(Circuit Court of Appeals, Second Circuit. February 1, 1926.)

### No. 170.

1. **Intoxicating liquors** ⬤⟞249—**Searches and seizures** ⬤⟞7—**Searching officer, after lawful entry, held not limited by terms of warrant as related to liquors which he could lawfully seize.**

Where affidavit alleged that affiant saw truck loaded with 10 or 12 barrels of intoxicating liquor drive into warehouse, and warrant recited that "certain intoxicating liquor" had been shown to be in warehouse, and ordered search for "said liquor," warrant was limited to the barrels described; but officer, after lawful entry under the warrant, could under Search Warrant Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼a et seq.) and Const. Amend. 4, lawfully seize all liquors found.

2. **Searches and seizures** ⬤⟞3—**Search Warrant Act regulates only entry of searching officer.**

Search Warrant Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼a et seq.) regulates only entry of searching officer, and not validity of any seizure after lawful entry.

3. **Searches and seizures** ⬤⟞7—**Validity of search after lawful entry determined by reasonableness.**

Lawful entry under Search Warrant Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼a et seq.) having been accomplished, validity of search and seizure made is determined by reasonableness, under Const. Amend. 4.

4. **Intoxicating liquors** ⬤⟞248—**Affidavit held not defective for failure to show that barrels to be searched for contained alcoholic beverages.**

Prohibition agent's affidavit that he saw truck loaded with 10 or 12 barrels of intoxicating liquor drive into warehouse, and that he knew liquor was intoxicating, because he smelled it, on which search warrant was issued, *held* not insufficient, on ground that it did not show that barrels contained alcoholic beverages.

5. **Intoxicating liquors** ⬤⟞248—**Affidavit held to sufficiently show that liquor to be searched for was left at warehouse.**

Prohibition agent's affidavit that he saw truck loaded with 10 or 12 barrels of intoxicating liquor drive into warehouse so constructed that goods entered by driveway, on which search warrant was issued, *held*, not insufficient, as failing to show that liquor was left at warehouse.

6. **Intoxicating liquors** ⬤⟞249—**Lapse of time between seeing of liquor enter warehouse and search therefor held not too long.**

A lapse of nine days between time when truck load of liquor was seen to enter warehouse and search therefor under warrant *held* not too long.

In Error to the District Court of the United States for the Southern District of New York.

Petition by the Old Dominion Warehouse, Inc., to vacate search warrant and for return of liquors seized thereunder. To review order vacating warrant, and directing return of property seized, the United States brings error. Order reversed, and petition dismissed.

Writ of error to an order of the District Court for the Southern District of New York, vacating a search warrant issued under the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

On April 2, 1925, the defendant in error filed a petition in the District Court, alleging: That it was the lessee of a general warehouse in New York, and that on April 7, 1923, it was in possession of 4,867½ cases of "various kinds of liquor," stored in the warehouse. That on that day one Grill, a prohibition agent, acting under a search warrant issued on April 3d, seized said cases and removed them. That the warrant on which the seizure was made was issued upon Grill's affidavit, to be later described, and that the warrant and proceedings under it were unlawful, because the affidavit was insufficient and because the warrant did not describe the property to be searched and seized. The government did not answer the petition, and the District Judge held that the seizure was unlawful, because the warrant did not sufficiently describe the liquors seized.

Grill's affidavit alleged: That on March 29, 1923, he saw a truck loaded with 10 or 12 barrels of intoxicating liquor drive into the petitioner's warehouse, and that he knew the barrels held intoxicating liquor because he could smell it. That the warehouse was so constructed that goods coming in for storage were not unloaded in front, but entered by a driveway so that the discharge could be directly into the building. That he had investigated the records and could find no permit under the National Prohibition Law for the premises.

Upon this affidavit on April 3d a warrant was issued which read as follows: "Whereas, it appears from the affidavit of Saul Grill that certain intoxicating liquor containing more than one-half of 1 per cent. of alcohol by volume and fit for use for beverage purposes is unlawfully held and possessed in the premises known as No. 83 West Houston street, * * * the entire premises being occupied as a warehouse by the Old Dominion Warehouse: * * * Now, therefore, you are hereby commanded * * * to enter the said premises, and then and there to search diligently for said liquor, and if the same or any part thereof shall be found on said premises then you are hereby authorized and commanded to seize and secure the same." On April 10th the officer made return that he had seized 4,867½ cases "of various kinds of intoxicating liquor."

Emory R. Buckner, of New York City (John M. Harlan and Horace G. Hitchcock, both of New York City, of counsel), for the United States.

Edward W. McDonald, of New York City (Ezra P. Prentice and Maitland Dwight, both of New York City, of counsel), for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] The warrant recites that Grill's affidavit has shown that "certain intoxicating liquor" was in the warehouse, and directs him to search for "said liquor" and seize "the same." It seems to us that the warrant was limited to the 10 or 12 barrels which Grill saw to enter; in short, that it incorporated by reference the description in the affidavit. As it is conceded that the liquors seized were necessarily greater in amount than the possible contents of 12 barrels, the petitioner argues that the warrant cannot justify the trespass. Indeed, the seizure was of "various kinds of intoxicating liquors," and it is most improbable that 12 barrels on a single truck would have held an assortment of alcoholic beverages. The case was therefore argued, and we think that it must have been argued, as involving the question whether, if such an officer once effects a lawful entry into a place like a warehouse, where no liquors may be lawfully held, he is confined to the terms of his warrant or whether he may seize all other liquors that he finds.

We think that he may, and that Steele v. U. S. (No. 1) 267 U. S. 498, 45 S. Ct. 414, 69 L. Ed. 757, sets at rest any doubts which might theretofore have existed. There the warrant was in the same terms as that at bar, and the affidavit which it incorporated spoke only of "cases of whisky." The property seized, lawfully, as the court said, consisted, not only of 150 cases of whisky, which was probably that seen, but 92 kegs, 5 jugs, and 2 barrels of whisky, 66 cases of gin, 5 gallons of alcohol, 102 quarts of whis-

10 F.(2d)—47

ky, and a corking machine. As the seizure was made hot-foot, even the whisky in kegs and barrels must have been other than what the warrant covered, and there could, of course, be no question about the other liquors and the corking machine.

There can be no escape, so far as we can see, from the conclusion that the court thought that upon a lawful entry the warrant was not the measure of the officer's powers, and it seems to us an inevitable gloss that he may gather up all the liquors which he finds in a place like a warehouse, which can lawfully house no such goods whatever.

[2, 3] If we have understood the case right it makes no difference what our own ideas may be, but it is relevant to the correctness of our interpretation whether the result violates the Search Warrant Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼a et seq.) and the Fourth Amendment. As we read the warrant, the question does not arise of any lack of particularity in its terms. They were specific enough; they directed Grill to seize the liquors described in his affidavit, and only those. All formal requisites were observed, and the supposed vice of the seizure goes deeper; it was without any warrant at all. And so, strictly speaking, it was; but the entry was lawful, and, as we view it, it is only that that the Search Warrant Act regulates. Once in, the question is whether the officer's added seizure was "unreasonable" under the Fourth Amendment. We think that it was not. If we suppose the case of goods which we are more used to thinking of as inherently contraband, like a burglar's kit, or counterfeiting paraphernalia, the case appears to us plain. We cannot suppose that, if an officer entered lawfully upon a warrant limited to certain described articles of this kind, he would not be justified in taking without warrant any others which he might chance upon in the premises. His seizure would not depend upon the warrant, but upon the fact that they were in their nature caput lupi; it would be as little an "unreasonable seizure" as to take property from a person arrested. Indeed, this seems to us a fair inference from Carroll v. U. S., 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790, where the seizure without warrant of liquor from a motorcar was sustained. Thus we think that the Search Warrant Act has no application to the seizure of so much of the liquors as were not contained in the barrels, and that the Fourth Amendment does not touch the case, because the added seizure was not "unreasonable"; the liquors being inevitably unlawfully possessed.

[4] There remains the question of the affidavit. This is challenged because it did not show that the barrels held alcoholic beverages, or that they had been left at the warehouse. It is quite true that this officer depended much on his nose, but we are not prepared to say that he might not safely do so. The smell of alcohol is different from the smell of whisky, or rum, or wines, and it is not incredible that a man might be able to tell it from the rest. Nor can we see that he must declare which sort of beverage he has distinguished, though doubtless it would have been more persuasive if he had.

[5] Again, we think his inference that the barrels were left at the warehouse was reasonable. A warehouse is for the storage of goods, and men ordinarily bring things there to leave them. It is perhaps possible that the truck went there to add to its load; but we may take notice that a dozen barrels is in itself a fair load. No more is required than a fair presumption; the probabilities are with the officer's conclusion. The affidavit did, indeed, leave much to be desired; but it contained enough suspicions to satisfy the requirements of the law.

[6] Finally, we think that the lapse of nine days between the entry of the truck and the search was not too long. It is quite true that the barrels or their contents might have been taken away; but the quantity was large, and it was not probable that one would put so much in a warehouse to take it out again so soon. Besides, the very fact that it had gone where it could not lawfully be, suggested that it was there for an illegal purpose, and the event was not unlikely which actually occurred; that is, that it was to be bottled presumably for sale or consumption. We cannot say that the period was too long.

Order reversed; petition dismissed.

HOUGH, Circuit Judge (concurring). The outstanding facts in this case are that the affidavit for search warrant did, in the language of the Fourth Amendment, particularly describe the things to be seized, viz. "ten or twelve barrels of intoxicating liquor"; that the warrant issued thereon directed search for and seizure of "the said liquor"; and that nine days after observation there was seized under the warrant, at the place designated and in wholly different containers, upwards of ten times as much of

"various kinds of intoxicating liquor" as could possibly have been contained in "ten or twelve barrels." From these uncontradicted facts I believe the only reasonable inference to be that what was seized was not what was smelled by the observing agent, and it is admitted that at least nine-tenths of the seizure was not "particularly described," nor even referred to, in either affidavit or warrant.

Not only the opinion in Steele v. United States, 267 U. S. 498, 45 S. Ct. 414, 69 L. Ed. 757, but an examination of the record therein, convinces me that no substantial difference can be pointed out between that case and this; therefore I must concur in the result reached by this court. But the results flowing from the decision should be recognized and stated. If this liquor was obtained by reasonable search, it is evidence in any prosecution directed against the person from whose keeping it was taken. So much was plainly held in the second Steele Case, 267 U. S. 505, 45 S. Ct. 417, 69 L. Ed. 761.

If the seizure had been made without any warrant, it would have been a violation of the Fourth Amendment, and the evidence so obtained, if admitted, would have vitiated any subsequent trial. Ames v. United States, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654. If the seizure had been of things capable of copying or photographing, the use of such copies or representations would have been equally objectionable. Silverthorne v. United States, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319, a decision which would plainly apply to any analysis or evidence concerning the nature of the subject-matter of the unconstitutional seizure.

The constitutionally poisonous nature of evidence obtained by any one in the service of the United States (even a private soldier—Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647), by an unreasonable search, and the narrow interpretation of the word "reasonable" as modifying "search" are doctrines painstakingly built up by a line of decisions, recently reviewed and appraised by Cardozo, J., in People v. Defore (N. Y. Ct. of Appeals, Jan. 12, 1926) 242 N. Y. 13, 150 N. E. 585, who unfortunately wrote before the Steele Case had to be harmonized with what the Supreme Court has been saying since Adams v. New York, 192 U. S. 585, 24 S. Ct. 372, 48 L. Ed. 575, fell into disgrace. I think the Steele decisions declare that, so far as intoxicating liquor is concerned, if an officer with a confident nose for alcoholic beverages will swear to the existence of a quantity, however minute, of that substance in a described place, the magic of a search warrant will legalize the seizure of any quantity of fluids ejusdem generis in that place.

But it is clear that, judged by any hitherto used standard of clarity, the Steele warrant did not describe particularly what was seized; therefore either intoxicating liquor (being, as Judge Hand puts it, caput lupi) need not be described with any particularity at all, and the only function of the warrant is to excuse entry, or the view entertained for some centuries that search warrants (in Lord Camden's phrase) crept into the common law by imperceptible steps, and are to be strictly construed in favor of personal liberty, needs extensive rectification.

The most interesting implication, however, of the Steele decisions is their effect on methods of obtaining evidence. So far as liquor cases are concerned, the way *seems* made so easy that doubts arise; it is *too* easy for a man with a good nose.

But why should the marked utility of search warrants in procuring evidence be restricted to liquor cases? There can be no reason; and hopes will arise that a way has been authoritatively suggested for mitigating the difficulties of proving crime erected by the well-known decisions reviewed by Judge Cardozo.

The possibilities of the Steele Case are so great that they should be studied, but that it specifically covers this particular litigation is all that can now be decided.