**UNITED STATES of America**
**v.**
**Alvin SMOLLAR, Defendant.**
**No. 71 Cr. 12.**

United States District Court,
S. D. New York.

Nov. 8, 1972.

Whitney North Seymour, Jr., U. S. Atty. by Jeffrey Harris, Asst. U. S. Atty., New York City, for plaintiff.

N. Henry Lindenauer, Jerald Rosenthal, Fruchtman & Lindenauer, New York City, for defendant.

*Memorandum Opinion*
*on*
*Motion to Suppress*

MOTLEY, District Judge.

The defendant, Alvin Smollar, was arrested on April 29, 1969 and indicted on January 7, 1971 (Indictment 71 Cr. 12) for violation of the mail theft statute, 18 U.S.C. § 1709.

Defendant filed a pretrial motion to suppress a credit card obtained from his automobile on April 29, 1969 and a confession obtained from him on the same date.

On May 9, 1972 the court held a suppression hearing to determine whether the credit card was legally seized and whether the confession was validly obtained. Defendant's motion is denied for the reasons set forth below.

Postal Inspectors Robert Bazen and Louis Duquette had been investigating the loss of credit cards on the delivery route to which defendant was assigned as a regular carrier. They gave a "test" letter to the foreman of mail carriers at defendant's station. The foreman placed the test letter in the mail that Mr. Smollar was to deliver. Inspector Bazen saw the letter placed in the tray from which defendant sorted his mail but could not actually see defendant remove the test letter from the tray and place it in his rack. The test letter contained a Diner's Club credit card.

The inspectors then followed defendant on his rounds and found that the letter was neither delivered to the place to which it had been addressed nor returned to the post office when defendant completed his rounds.

After the inspectors verified that the test letter had not been returned to the post office, they observed defendant leave the station at 2:16 P.M. They arrested him at a nearby garage as he was getting into his automobile. As Mr. Smollar stepped out of the automobile, Inspector Bazen patted him down. He then advised defendant that he did not have to say anything, that anything he said could be used against him in court, that he could have an attorney, and that if he could not afford one, an attorney would be appointed for him. Mr. Bazen further told defendant that any discussion of Mr. Smollar's case would await their arrival at the General Post Office. Defendant denied that he was so advised.

Defendant and the postal inspectors then entered defendant's car and defendant drove them to the General Post Office. Inspector Bazen, who was sitting in the back seat, observed a book with the end of what he believed to be a credit card protruding. He opened the book and observed a Unicard credit card. The book containing the credit card was then carried to Inspector Bazen's office at the General Post Office.

Defendant contended that the inspectors discovered the Unicard during a search of the trunk of his automobile. The inspectors did not have a search warrant.

After arriving at the General Post Office, defendant and the two postal inspectors proceeded to Inspector Bazen's office. Defendant signed a warn-

ing and waiver form listing the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and stating his intention to waive those rights. (*See* Government's Exhibit 2). Defendant dated the form and put the time of 2:35 P.M. on it. He also signed the confession in question and a letter of resignation from the post office.

I. Defendant claims there was not adequate probable cause to justify the arrest on April 29, 1969 and, therefore, the evidence discovered in the automobile and the confession obtained at the General Post Office are inadmissible as fruits of an illegal arrest. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ The court rejects this contention. As found above, prior to defendant's arrest, Inspectors Bazen and Duquette had been advised that credit cards had been lost on Mr. Smollar's route. On April 29, 1969, the inspectors, as part of their investigation, gave a test letter to defendant's foreman containing a credit card addressed to a person on defendant's route. They followed defendant on his rounds and observed that the test letter was not in the addressee's mailbox nor was the letter returned to defendant's post office station.

The evidence before the inspectors at the time they arrested Mr. Smollar did not point conclusively to defendant's guilt. One of the other men regularly assigned to defendant's route or neighbors may have been responsible for the credit card losses which the inspectors were investigating. There are also innocent explanations for the loss of the test letter. The inspectors did not actually see the letter placed in defendant's rack. It is possible, therefore, that the letter was misplaced at the station. It is also possible that defendant mistakenly delivered the letter to the wrong address or that it was delivered to the proper address but that the addressee removed it from the mailbox before the inspectors were able to observe the box's contents.

Nevertheless, "[e]vidence required to establish guilt is not necessary. . . . Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959).

The use of test letters is a common means of investigating mail theft by postal employees. There are inevitably flaws in the procedure—inspectors can observe suspects racking their mail only from a distance and, therefore, cannot be certain that the letter has been placed in the suspect postman's bag. Moreover, inspectors cannot be sure that mail has not been delivered to a wrong address or stolen by a neighbor because of the need to remain a prudent distance behind the suspect. The only precaution that might have been followed in this case would have been an effort to learn from the addressee whether he had picked up the letter prior to the inspectors' arrival at the box. The court cannot say, however, that this failure rendered the arrest imprudent.

II. Defendant consented to the inspectors' entry into his automobile subsequent to his arrest. "It long has been recognized that consent to a search justifies a warrantless intrusion." United States v. Ellis, 461 F.2d 962 (2d Cir. 1972).

Inspector Bazen, according to his testimony, told defendant shortly after the arrest that they would go to the General Post Office in defendant's car and defendant said "Fine."

The court does not find credible defendant's testimony that immediately following his arrest, one of the inspectors showed him his badge, said, "Get in the car," defendant then asked, "What is the matter?" and the inspector replied, "Get in the car and shut up or I will put a bullet in your ass. . . ."

■ That defendant was not advised of his right to refuse to permit the inspectors to enter his automobile with-

out a warrant does not, by itself, render defendant's consent invalid, *United States ex rel. Combs v. LaVallee*, 417 F. 2d 523 (2d Cir. 1969), although whether warnings have been given is obviously a factor to be considered in determining whether the consent is valid. *See Ellis, supra.*

■ Moreover, the fact that defendant was under arrest at the time he consented to the entry does not render the consent invalid *per se*: ". . . [W]hile consent is not to be lightly inferred, the mere fact that a suspect is under arrest does not negate the possibility of a voluntary waiver of Fourth Amendment rights." *Ellis, supra.*

While a claim that consent has been given may be implausible where a defendant agrees to a search knowing that contraband is present in the area to be searched, *Higgins v. United States*, 93 U.S.App.D.C. 340, 209 F.2d 819 (1954), in the instant case, the inspectors did not express an intention to search the automobile. They asked defendant if they could use his automobile to drive to the General Post Office. It is doubtful that defendant anticipated that the inspectors, once inside the vehicle, would chance upon a credit card or that they would take his consent to an entry into the automobile as authorization to search the car for stolen goods.

■ III. The court finds that Inspector Bazen observed the Unicard credit card in "plain view" during the drive to the General Post Office.

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

According to his testimony, Inspector Bazen, while sitting in the back seat of defendant's automobile, saw a book on the floor with a small piece of plastic protruding. He testified that he thought he saw the white side of the card. The court finds the testimony of the inspector more credible than the testimony of defendant that the inspectors searched the trunk of his car.

In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), reh. denied, 404 U.S. 874, 92 S. Ct. 26, 30 L.Ed.2d 120 (1971), Mr. Justice Stewart, in a portion of his opinion joined by three other members of the Court, elaborated on the standards applicable to searches and seizures of evidence in plain view. First, officers must have a prior justification for the intrusion which results in their discovery of the seizable evidence and it must be "immediately apparent to the police that they have evidence before them. . . ." 403 U.S. at 466, 91 S.Ct. at 2038. This suggests that government officers must have more than mere probable cause that what they see is seizable. The court adopts this standard because it is obvious that a probable cause standard would undermine the warrant requirement. For if government officers could seize anything they happened to see where they only had probable cause to search or seize it, there would be no need to obtain warrants to authorize seizures of objects likely to be found where officers had a right to be. This would be at odds with the requirement announced in *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), that warrants must ". . . particularly describe the things to be seized. . . ." *Id.* at 196, 48 S.Ct. at 76. The rationale of the rule is that, even where an officer has probable cause to believe that an item is seizable, there is an independent value in his presenting his evidence to a neutral magistrate prior to the seizure.

However, although the officer must have more than probable cause to believe that the item is seizable, "absolute certainty" is not required. *United States v. Drew*, 451 F.2d 230, 233 (5th Cir. 1971). The plain view exception would be worthless if officers had to be "absolutely certain" that what they saw was seizable. It would be unreasonable to impose on police officers a higher stand-

ard of certainty than that required of juries in criminal cases.

Inspector Bazen could not be absolutely certain that what he saw was a stolen credit card rather than some innocent, unseizable item, such as an identification card or credit card belonging to defendant. Nevertheless, the fact that he had probable cause to arrest defendant for the embezzlement of credit cards and the fact that the credit card contained in the test letter had not been located either in the addressee's mailbox, the postal station, or on defendant's person during the "pat down" gave the inspector strong reason to believe that the credit card had been placed in the car by defendant. Therefore, it was "immediately apparent" to Inspector Bazen that the piece of plastic protruding from the book was a stolen credit card.

■ An additional requirement announced by Mr. Justice Stewart for seizures of items in plain view is that their discovery be "inadvertent." *Coolidge, supra*, 403 U.S. at 469–471, 91 S.Ct. 2022; i. e., that the police not know in advance that they will find the particular item or items. However, the requirement applies only to "the seizure of objects—not contraband nor stolen nor dangerous in themselves. . . ." *Id.* at 471, 91 S.Ct. at 2041. Since it was immediately apparent to Mr. Bazen that this was a stolen credit card, the inadvertency rule does not apply.

■ IV. Alternatively, the search of the book and the seizure of the credit card can be sustained as incidental to defendant's arrest.

Since the search and seizure occurred on April 29, 1969, prior to June 29, 1969, the date on which Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969),[1] was decided, pre-*Chimel* standards govern this case. Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

In Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947),

petitioner was arrested in the living room of his apartment. The Supreme Court held that a search of his bedroom was valid as a search incident to the arrest, since petitioner was in exclusive possession of his four-room apartment and "[h]is control extended quite as much to the bedroom in which . . . [evidence was] found as to the living room in which he was arrested." *Id.* at 152, 67 S.Ct. at 1102. Moreover the search was held to be appropriate for the discovery of instrumentalities of the crime. *Id.* at 153, 67 S.Ct. 1098.

The Second Circuit has interpreted *Harris* as requiring that there be a "fair basis for belief that the place searched . . . would contain instruments or fruits of the crime for which the arrest was made." United States v. Francolino, 367 F.2d 1013, 1017 (2d Cir. 1966), cert. denied 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1967).

Decisions subsequent to *Harris* have appeared to narrow somewhat its reach. In Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957), the Court held that seizure of the entire contents of a cabin and removal of the evidence to a Federal Bureau of Investigation office some two hundred miles away were "beyond the sanction of any of our cases." *Id.* at 347, 77 S.Ct. at 829.

A search of defendant's home two blocks away from the place of his arrest was held invalid in James v. Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30 (1965). The Court declared that "[a] search 'can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest.'" *Id.* at 37, 86 S.Ct. at 151.

In Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), the Court held that, under pre-*Chimel* standards a house could not be searched incident to an arrest of defendant on the front steps of the house: "If a search of

---

1. *Chimel* held that the scope of an incidental search extends only to the area within the reach of the person arrested.

a house is to be upheld as incident to an arrest, that arrest must take place *inside* the house, not somewhere outside— whether two blocks away, twenty feet away, or on the sidewalk near the front steps." *Id.* at 33–34, 90 S.Ct. at 1971.

The search and seizure in the instant case satisfies these pre-*Chimel* requirements. Inspector Bazen had a "fair basis for belief" that there was a seizable item within the area searched, i. e., the floor of the rear of defendant's automobile. He had probable cause to believe that defendant was stealing credit cards when he arrested him. He did not discover the card contained in the test letter when he patted defendant down and could reasonably have concluded that defendant placed the card someplace in the automobile while he was in the garage. When Inspector Bazen saw a piece of plastic protruding from a book, he certainly had a "fair basis for belief" that it was a stolen credit card.

Moreover, the search and seizure were "substantially contemporaneous" with the arrest. The arrest, according to Inspector Bazen's testimony, occurred sometime after 2:16 P.M. As the court finds below, defendant signed his waiver of rights form in Inspector Bazen's office at approximately 2:35 P.M. Therefore, the search and seizure occurred within minutes of the arrest.

■ Finally, in contrast to the arrest in *Vale* the arrest here occurred when defendant was partially inside the area which was searched. Since defendant might well have dropped the test letter inside the car, it was reasonable for Inspector Bazen to search the rear of the automobile for evidence of the crime for which defendant was arrested.[2]

■ V. The court finds that the confession was validly obtained.

Defendant was given the warnings required by *Miranda*, and waived his rights to remain silent and to have counsel present prior to his questioning by the inspectors. Inspector Bazen testified that as soon as he, Inspector Duquette and defendant arrived at his office, he read aloud to Mr. Smollar the warnings on the form, and asked Mr. Smollar whether he understood what had been read to him. After defendant answered affirmatively, according to Mr. Bazen's testimony, Mr. Smollar signed

2. If the discovery of the credit card can be considered the product of a search incident to arrest, the fact that the search was undertaken would not invalidate the consent given by defendant to the initial entry into his automobile. It was found above in Part II of this opinion that defendant's consent was plausible because he had no reason to anticipate that the inspectors would search his automobile. His likely belief that the only reason the inspectors were entering his car was for the drive to the General Post Office was not a product of trickery on the part of the inspectors since there is no evidence to suggest that the inspectors intended to search the automobile when they obtained the consent.

It is unlikely that Inspector Bazen intended to conduct a search until he chanced upon the book with the piece of protruding plastic. Once he saw the plastic he had a "fair basis for belief" that the book contained seizable evidence and could, therefore, conduct a search incident to arrest without defendant's consent.

The search and seizure, however, cannot be sustained under the "automobile exception" permitting, under some circumstances, warrantless searches of movable vehicles. *See* Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) reh. denied, 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970) ; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The "underlying rationale of the 'automobile exception' is that exigent circumstances justify the warrantless search of an automobile, when there is probable cause, where 'the opportunity to search is fleeting . . .'" United States v. Ellis, 461 F.2d 962 (2d Cir. 1972). Therefore, the government must show that there was probable cause for the search and that exigent circumstances made it reasonable for government officers to search the vehicle without first obtaining a warrant. *See Ellis, supra.*

In the instance case, the government, relying principally on the "plain view" theory, offered no evidence that exigent circumstances justified a warrantless search.

the form, dated it and entered the time of 2:35 P.M.

The court does not believe defendant's testimony that he signed the waiver form ninety minutes after being taken to the General Post Office. Mr. Smollar entered the time of 2:35 P.M. on the waiver form. There is no credible evidence that defendant was induced to enter an incorrect time.

Defendant's testimony that his signatures on the waiver form and the confession were induced by threats and promises is likewise incredible. Mr. Smollar testified that, before he signed the waiver, the inspectors told him that they had plenty of time, that they could "stay here" for days and that defendant would stay with them until he gave them a confession. He further testified that the inspectors told him that if he signed "anything they told [him] to write," he would be permitted to resign from the post office and everything would be forgotten. He signed a letter of resignation from the post office that afternoon.

While such threats and promises would render the waiver invalid,[3] the court does not believe that defendant was threatened or cajoled. The inspectors already had strong evidence against defendant—the credit card found in Mr. Smollar's car and the apparent failure of Mr. Smollar to deliver the test letter. Given defendant's signature on the warning and waiver form, and the lack of any strong incentive on the part of the inspectors to coerce defendant into waiving his privilege against self-incrimination, this court cannot find that defendant's signing of the waiver form was invalid.

While the *Miranda* court indicated that "[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to re-

tained or appointed counsel," *Miranda*, *supra*, at 475, 86 S.Ct. at 1628, the government met its burden by introducing the waiver form signed by defendant. Defendant's bald assertion that his signature on the waiver form was induced by threats and promises is not sufficient to warrant a finding that the waiver was ineffective. Nor was there sufficient evidence that defendant was so overwhelmed and confused by his arrest and detention that he was incapable of making a knowing and intelligent waiver. Defendant's age was 43 at the time of his interrogation and he was a high school graduate. He testified at the hearing that he had a "pretty good recollection" of what occurred in Inspector Bazen's office. There is no credible evidence in the record of the hearing to support a finding that defendant was too confused to have voluntarily waived his rights. To support a finding that defendant was incapable of waiving his rights, the court would have to conclude that the mere fact of detention was so inherently intimidating that a detainee could not waive his constitutional rights, a result hardly anticipated by the *Miranda* Court which contemplated that rights could be validly waived by persons in custody.

VI. The court holds that defendant's detention in Inspector Bazen's office was not unlawful.

Defendant contends that the detention was for the purpose of extracting confessions "to make an airtight case" instead of making arrangements for a prompt arraignment of defendant and that, consequently, the confessions were obtained in violation of McNabb v. United States, 318 U.S. 332, 163 S.Ct. 608, 87 L.Ed. 819 (1943) and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479 (1957). However, the *McNabb-Mallory* rule was superseded by Title II of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 3501. United States v. Johnson, 467

---

3. "[A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the de-

fendant did not voluntarily waive his privilege." *Miranda*, *supra* at 476, 86 S.Ct. at 1629.

F.2d 630 (2d Cir. 1972). The statute provides in pertinent part:

> (c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest . . . shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention. . . .

The court has found that the confession was voluntary since it was obtained in compliance with *Miranda*. Moreover, the confession was obtained within three hours of defendant's arrest. Inspector Bazen testified that the confession was obtained between 4:30 and 5:00 P.M. Defendant testified that he probably signed the waiver, confession and resignation within 90 minutes of his arrival at the General Post Office.

Defendant's motion is accordingly denied.