**UNITED STATES of America**

**v.**

**James Arthur CHARLTON et al.**

**Crim. No. 3–75–64.**

United States District Court,
E. D. Tennessee, N. D.

Dec. 17, 1975.

Gene A. Stanley, Jr., Knoxville, Tenn., for James Arthur Charlton.

Eugene B. Dixon, Maryville, Tenn., for Mark A. Charlton.

Jerry Foster, Chattanooga, Tenn., for Donald Lee Howie.

Philip P. Durand, Knoxville, Tenn., for Franklin Neil Jacek.

E. Michael Ellis, Knoxville, Tenn., for James Francis Swartz.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., for the U. S.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Before the court is a motion to suppress all evidence seized in connection with a search of the premises known as 214 East Harper Street, Maryville, Tennessee, on or about June 25, 1975. This search preceded defendants' indictment for counterfeiting postage stamps and for possession of same with intent to use and sell. 18 U.S.C. §§ 2, 501.

Defendants contend that the affidavit supporting the application for the search warrant was facially insufficient to establish probable cause and was therefore an imposition upon the independent judicial prerogative of the Magistrate to whom it was presented.

A hearing on the motion was conducted pursuant to Rules 12 and 41, F.R. Cr.P.

Special Agent Ronald E. Seimanski presented the following factual grounds to the Magistrate in support of the application:

"Mr. Jim Wise, Huntsville, Alabama, provided information to Postal Inspec-

tors L. G. Weaver and Paul Cummerford at Huntsville, Alabama, on Wednesday, June 18, 1975, that on June 7, 1975 at 805 Tift Avenue, Southeast, Atlanta, Ga., he saw in the possession of Donald Lee Howie and Jimmy Swartz two (2) suitcases and that the suitcases were opened in his presence and he saw the two suitcases contained sheets of U. S. Postage Stamps. The postage stamps were in denominations of fifty (50) cents and were reddish purple color. The postage stamps had no border or plate block number and were in loose sheets and not bound in any manner. Mr. Wise stated the perforations on the postage stamps were not uniform. Howie and Swartz would not disclose how or where they had obtained the U. S. Postage Stamps. Within the next four days Wise met Jimmy Swartz in Nashville, Tennessee, where Swartz acknowledged to him that the U. S. Postage Stamps he had observed in the two (2) suitcases in Howie's and Swartz's possession in Atlanta, Georgia, on June 7, 1975, were counterfeit. Swartz further related, the counterfeit fifty cent stamps had been and were being produced by Jim Charlton at or near Maryville, Tennessee. Wise further related to Postal Inspectors Weaver and Cummerford that he had developed additional information that the counterfeit U. S. Postage Stamps had been manufactured at DBD Land Development Corp., 214 East Harper Street, Maryville, Tennessee. In order to corroborate information provided by Mr. Jim Wise, Postal Inspector Weaver visited Mrs. Dorris Cross, the owner of the property at 805 Tift Avenue, Atlanta, Ga., where the meeting took place between Wise, Donald Lee Howie and Jim Swartz on June 7, 1975. Dorris Cross told Postal Inspector Weaver she was present at the initial meeting on June 7, 1975, when Wise, Howie and Swartz talked and saw Swartz go to the car which Howie and Swartz had arrived in just before the meeting and remove two suitcases of the same description as provided by Wise, and bring them to the room where Wise, Howie and Swartz were talking.

On June 23, 1975, I personally interviewed Mrs. H. L. Trent and Mr. Howard Arp, employees of Cordage of Knoxville. They stated to me that Mr. James Charlton of DBD Corp., 214 East Harper, Maryville, Tennessee, had purchased 8000 sheets of white gummed paper cut to 9″ x 10¼″ on May 2, 1975. Mr. Arp stated that Mr. James Charlton, whose photograph was identified by Mrs. Trent stated that Mr. Charlton paid for this purchase with a $1,000 Cashier Check.

Mr. Randy Johnson of the Walter A. Floyd Company, Knoxville, Tennessee, stated to Secret Service Agent Robertson at Knoxville, Tennessee, on June 24, 1975, that Mr. James Charlton, whose photograph he identified, had approached him in early April 1975 in an attempt to locate and purchase a perforator that made round holes as opposed to long slits.

The requested size of gummed paper is consistent size and thickness of genuine sheets of 100 fifty cent U. S. Postage Stamps which are perforated between each stamp. On June 23, 1975, at 7:30 p. m., MacVean K. Sweazey was standing outside the building at 214 East Harper Street, Maryville, Tennessee, and heard a printing press in operation. Mr. Sweazey has experience and knowledge to recognize the sound produced by a printing press in operation. From June 20, 1975, Mr. James Charlton and his son, Mark, have been observed entering and leaving the premises at 214 East Harper Street, Maryville, Tennessee." [1]

1. The government informed the Court that both informers, Wise and Cross were unavailable to testify at the hearing on the motion to suppress because they had been murdered. It was not suggested that the murders were in any way related to this case.

Defendants set forth five grounds in support of their motion. These grounds will be discussed seriatim.

I. The affidavit lacks sufficient allegations to establish the reliability of the government's informants, Jim Wise and Dorris Cross.

This contention is apparently addressed to the second prong of the "two-pronged" standard for testing the sufficiency of affidavits which contain hearsay as set out in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). This test requires that the affidavit show some of the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable. 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 728.

■ An averment tending to establish previous reliability of the informant is not an absolute necessity to insure the sufficiency of an affidavit. *United States v. Harris,* 403 U.S. 573, 581–82, 91 S.Ct. 2075, 2080–81, 29 L.Ed.2d 723, 732–33 (1973). Not only were the informants in this case named informants, but also there were other allegations in the affidavit which tended to corroborate the information attributed to Wise and Cross. Such information can be considered by the Magistrate in determining whether the information provided by the informants should be credited. *Spinelli v. United States,* 393 U.S. 410, 418, 89 S.Ct. 584, 590, 21 L.Ed.2d 637, 644 (1969).

■ The affidavit stated that Wise had witnessed some of the contraband stamps in the possession of defendants Howie and Swartz. This was corroborated by the information attributed to informant Cross that a meeting had taken place at the time and place indicated by Wise and that two suitcases were brought into the room where the men had met.

The information attributed to Wise that counterfeit postage stamps were being produced at DBD Land Development Corporation, 214 E. Harper Avenue, Maryville, Tennessee, was corroborated by independent police investigative efforts which revealed that James Charlton of DBD Corporation had purchased paper similar to that used in producing postage stamps and had attempted to purchase a perforator which made round holes similar to those in postage stamps. The information was further corroborated by the statement that a person experienced in printing press operation heard a printing press in operation at 214 East Harper Street on the night of June 23, 1975.[2]

■ It was argued at the hearing that the corroborative information was "innocent" activity similar to that rejected as insufficient in the *Spinelli* case. In the present case, however, these activities, coupled with the other circumstances stated in the affidavit, were enough to arouse suspicion in the mind of a reasonable person. The Magistrate is obligated to render a judgment based upon a common-sense reading of the entire affidavit. *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, 688 (1965).

The details allegedly related by Wise concerning the suspicious character of the stamps he observed and the details allegedly related by Cross with respect to the June 7th meeting in Atlanta could properly be considered by the Magistrate in determining that the information had been obtained in a reliable way. *Spinelli, supra,* 393 U.S. at 417, 89 S.Ct. at 589, 21 L.Ed.2d at 644. Furthermore, the affidavit recounted personal and recent observations of criminal activity by Wise. See *United States v. Harris,* 403 U.S. 573, 579, 91 S.Ct. 2075, 2079, 29 L.Ed.2d 723, 731 (1971).

■ Counsel for the defendants offered to prove that the government had

---

2. At the hearing it was represented to the Court that DBD Land Development Corporation is in the printing business. We note, however, that the name of the corporation it- self could have caused a reasonable person to be suspicious of the printing operations that were allegedly being conducted.

knowledge that informant Wise was a "cattle rustler" and that informant Cross was an alcoholic. Counsel contended that this information should have been included in the affidavit and that failure to do so was an imposition on the Magistrate. We know of no requirement that the affiant provide all the information available to him at the time an application for a search warrant is made. The affidavit need only establish the probability of criminal activity at a specific premises and probability that contraband will be found there, and not proof beyond a reasonable doubt. Our inquiry is necessarily limited to the matters that were brought to the Magistrate's attention. *Spinelli, supra,* 393 U.S. at 413 n. 3, 89 S.Ct. at 587, 21 L.Ed.2d at 642.

When the affidavit is considered in its entirety, there are sufficient underlying circumstances from which it could have been concluded that the information provided by Cross and Wise was sufficiently reliable to support the application for the search warrant.

II. The affidavit lacks sufficient allegations to establish the reliability of statements made by co-defendants, James F. Swartz and Donald E. Howie, as those statements were attributed to them by informant Jim Wise.

■ We find no statement in the affidavit attributed to Howie by the informer Wise except possibly a statement that Howie would not disclose how he had obtained possession of the contraband postage stamps. Swartz's alleged statements that the postage stamps were counterfeit and were being produced at or near Maryville, Tennessee, could be considered an admission to a crime or a statement against his penal interest, thus affording the statements some degree of reliability. *Spinelli, supra,* at 425, 89 S.Ct. at 593, 21 L.Ed.2d at 649 (White, J., concurring); Rule 804(b)(3), Federal Rules of Evidence.

We do not view the credibility of Swartz and Howie as being the important issue before us. The central issue is the credibility and reliability of the informants Wise and Cross, which was discussed above in Part I.

III. The statements made in respect to the premises searched are "hearsay on hearsay" without a substantial basis for crediting the hearsay as presented.

■ "Double hearsay" is not *per se* ineligible to be considered in a probable cause determination. Subject to the limitations described in *Aguilar* and *Spinelli, supra,* such evidence may be considered by the Magistrate. *United States v. Jenkins,* 525 F.2d 819 (6th Cir. 1975), citing *United States v. Kleve,* 465 F.2d 187, 191–93 (8th Cir. 1972) and *United States v. Smith,* 462 F.2d 456, 459–60 (8th Cir. 1972).

IV. The affidavit does not contain a sufficient statement of the underlying circumstances from which the government's informants concluded that the premises searched was being used for the commission of the crime alleged.

■ Counsel for the defendants contends that there was no basis for informant Wise's conclusion that the premises to be searched was 214 East Harper Street. Apparently this argument goes to the first prong of the test established by *Aguilar, supra.* This test requires that the Magistrate be informed of some of the underlying circumstances on which the informant's conclusion was based. 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 728.

The affiant recited that Wise "had developed additional information" linking the alleged counterfeiting operation to 214 East Harper Street. The nature of this "additional information" was not related. If this were the sole ground linking the alleged counterfeiting operation to the premises, a very serious question might be presented with regard to the sufficiency of the affidavit. This information is not to be viewed in isolation, however. Corroborating it was a state-

ment attributed to Swartz that the stamps were being produced at or near Maryville, Tennessee. Also corroborating the statement was other information, developed by independent police investigation, which linked the alleged operation to the premises which was to be searched. Additionally, it is noted that Wise was reported to be an eye witness to certain other events in connection with the criminal activity alleged in the affidavit. *See United States v. Jenkins, supra*, at 823.

V. The affidavit does not recite sufficient incriminating facts owing directly to the personal knowledge of the affiant, or his co-agents, as to cure the other substantive defects of the affidavits or to corroborate the unsubstantiated information furnished to the Government agents by the informants.

█ Rule 41, F.R.Cr.P., provides that "[t]he finding of probable cause may be based on hearsay evidence in whole or in part." Furthermore, affidavits in support of an application for a search warrant "are normally drafted by nonlawyers in the midst and haste of a criminal investigation", and must be tested and interpreted by magistrates and courts in a "commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, 688 (1965).

The affidavit in the present case provided a substantial basis for crediting the hearsay contained therein. It is true that the only personal knowledge that the affiant had of the alleged criminal activity grew out of an interview with employees of the business from which James Charlton allegedly bought paper similar to that used in the production of postage stamps. As discussed previously, however, the affidavit, taken as a whole, provides sufficient underlying circumstances from which the Magistrate could conclude that a criminal offense was probably being or had been committed on the premises to be searched and that the particular items to be seized would probably be found on the premises.

For the reasons stated above, the motion to suppress is denied.