**UNITED STATES of America, Respondent-Appellant,**

v.

**Vincent and Barbara LIBERTI, Movants-Appellees.**

**No. 1189, Docket 79–1127.**

United States Court of Appeals, Second Circuit.

Argued July 18, 1979.

Decided Jan. 25, 1980.

David C. Patterson, Asst. U. S. Atty., S. D. N. Y., New York City (Robert B. Fiske, Jr., U. S. Atty., and Richard D. Weinberg, Asst. U. S. Atty., S. D. N. Y., New York City, on the brief), for respondent-appellant.

George David Rosenbaum, New York City, for movants-appellees.

Before VAN GRAAFEILAND, NEWMAN and KEARSE, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from (1) an order of the United States District Court for the Southern District of New York suppressing evidence seized by United States Postal Inspectors during an authorized search of appellees' residence and (2) an order, following reargument, adhering to the original suppression order.

### FACTS

On June 12, 1978, James Boyle, a United States Postal Inspector, was informed by security personnel at Saks Fifth Avenue that several employees were believed to be stealing merchandise and sending it home

through the mail. Appellee Vincent Liberti was one of those under suspicion. An employee in the Saks mailing room told Boyle that he had mailed "several parcels" to the Liberti residence during the preceding year. He could, however, fix no specific dates for the mailings and had no knowledge as to the contents of the packages. Other employees stated that parcels "may have been mailed" to the Liberti address but did not say how many.

Following Boyle's entry on the scene, two packages addressed to the Liberti home were identified as they passed through the mail room, one on June 23 and the other on June 29. The contents of the first box were unknown; the second contained Estee Lauder cosmetic gift boxes. Postal authorities were unable to determine whether the first box was delivered, because their attempt to put a stop on it was unsuccessful. They did ascertain, however, that the second box was delivered to the Liberti residence.

Prior to applying for a search warrant, Boyle conferred with an Assistant United States Attorney, who advised him, correctly, we believe, that probable cause for the issuance of a warrant existed only as to the June 29 box. Accordingly, Boyle's application was directed to the June 29 mailing. In his affidavit, Boyle stated that for the preceding several weeks he had been investigating possible mail fraud violations at Saks; that during this time a Saks security employee had observed brown cardboard boxes being prepared for mailing; that these were addressed by hand and lacked the customary invoices and mailing documents; that several of these boxes had been opened and were found to contain clothes, cosmetics, and other Saks merchandise. The affidavit stated further that a brown cardboard box addressed to Mrs. Liberti was delivered to her on June 29; that

the contents had been examined prior to mailing and consisted of Estee Lauder gift boxes belonging to Saks. The warrant issued by a United States magistrate authorized the search of the Liberti premises and the seizure of "one (1) brown cardboard box addressed to Mrs. Barbara Liberti, containing Estee Lauder cosmetic gift boxes, which are believed to constitute evidence of violation of Title 18, United States Code, Section 1341."

The warrant was executed on July 10, 1978, by three postal inspectors, who were accompanied by the security operations manager of Saks, a Mr. Burger. Although Boyle did not know what property would be found in the Liberti residence, he "believed" or "assumed" that Saks merchandise other than that contained in the June 29 mailing might be found. He instructed the inspector in charge of the search that he could seize any items belonging to Saks that were not properly in the residence until he found the goods covered by the warrant, at which time the search was to cease.[1] Mr. Burger was along to identify Saks merchandise.

The inspectors were admitted by Mrs. Liberti, who was given a copy of the warrant and told that the inspectors were looking for the brown box containing Estee Lauder cosmetics. At first, Mrs. Liberti denied having the cosmetics, but, after being told that the search would have to be made, she went to a hall closet, opened the door, and said "this is all I have" or "this is all there is." Inside the closet, in plain view on both the shelf and the floor, were stacked boxes of cosmetics, which Mr. Burger believed were Saks items. These were seized by the inspectors. The brown box was not in the closet.[2]

Mrs. Liberti was then asked if there was a basement, and she opened the basement

---

1. Although one of the three inspectors apparently did not understand that the search was to be limited to the June 29 box and its contents, that inspector did not discover or seize any of the evidence which appellees are seeking to suppress.

2. The brown box involved in the June 29 mailing was never found. A brown box was found in a garage on the premises, but the district court held that the garage was not owned by the Libertis and that no consent for its search was given. The Government does not contest this finding on appeal.

door and turned on the cellar light for two of the inspectors. As the inspectors descended into the basement, they saw in plain view under the open stairway a quantity of boxes and shopping bags containing additional cosmetics. When Mr. Burger indicated his belief that this was also Saks merchandise, it too was seized. After the inspectors discovered this merchandise, Mrs. Liberti stated again that "that is all there is, there is no more."[3] The entire search lasted about one hour and was conducted in a polite and gentlemanly manner.

Because the merchandise seized by the inspectors was not in the brown box, it may not all have been delivered in the June 29 mailing. The Government argued nonetheless that seizure was justified because the inspectors were lawfully on appellees' premises to search for the brown cardboard box and its contents and the items seized were in plain view of the inspectors during their search. The district court, relying mainly on *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), held that the plain view doctrine did not apply, because the inspectors' discovery of the seized items was not inadvertent but was instead "anticipated." The court refused, however, to order the seized merchandise returned to appellees, stating that the evidence tended to show that it "may have been the fruit of an illegal scheme."

## DISCUSSION

Although the portion of Justice Stewart's opinion in *Coolidge v. New Hampshire, supra*, that added the concept of inadvertence to the traditional doctrine of "plain view" was concurred in by only three justices, most courts have accepted it as the law of the land. *See, e. g., United States v. Berenguer*, 562 F.2d 206, 210 (2d Cir. 1977); *United States v. Griffith*, 537 F.2d 900, 903 (7th Cir. 1976); *United States v. Cushnie*, 488 F.2d 81, 82 (5th Cir. 1973), *cert. denied*, 419 U.S. 968, 95 S.Ct. 233, 42 L.Ed.2d 184

(1974); *United States v. Gray*, 484 F.2d 352, 355 n.7 (6th Cir. 1973); *but see United States v. Bradshaw*, 490 F.2d 1097, 1101 n.3 (4th Cir. 1974). There has not, however, been a unanimity of opinion as to what this portion of *Coolidge* really stands for. *See United States v. Santana*, 485 F.2d 365, 369 n.8 (2d Cir. 1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974).

For example, Justice Stewart carefully pointed out that *Coolidge* did not involve contraband or stolen goods. 403 U.S. at 472, 91 S.Ct. 2022. He stated that "to extend the scope of [a lawful] intrusion to the seizure of objects—not contraband nor stolen nor dangerous in themselves—which the police know in advance they will find in plain view and intend to seize, would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure." *Id.* at 471, 91 S.Ct. at 2041. Justice White, who dissented, recognized that the Court was making a distinction between plain evidence and contraband. Referring to Justice Stewart's opinion, he said, "[a]pparently contraband, stolen, or dangerous materials may be seized when discovered in the course of an otherwise authorized search even if the discovery is fully anticipated and a warrant could have been obtained." *Id.* at 519, 91 S.Ct. at 2064. Justice Black, who also dissented on this point, apparently construed the plurality opinion in the same manner. *See id.* at 507 n.4, 91 S.Ct. 2022.

A number of lower courts have also interpreted Justice Stewart's opinion literally and have held the "inadvertence" doctrine inapplicable to stolen goods or contraband. *See, e. g., United States v. Cutts*, 535 F.2d 1083, 1084 (8th Cir. 1976); *United States v. Carwell*, 491 F.2d 1334, 1336 (8th Cir.), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *United States v. Smollar*, 357 F.Supp. 628, 633 (S.D.N.Y.1972). Indeed, this Court has stated on at least one occasion that this might be the proper reading of Justice Stewart's opinion. *See Unit-*

---

**3.** The inspectors also found a blue nylon bag and a brown tote bag, both identified as Saks merchandise, in the closet of a bedroom. The Government does not contest on appeal the suppression of these two items, limiting its claim in this Court to the merchandise seized in the hall closet and the basement.

*ed States v. Zaicek*, 519 F.2d 412, 415 n.3 (2d Cir. 1975).

The Government, on the other hand, says it finds no sound basis for distinguishing between "mere evidence" and contraband and therefore does not urge it in this case. At the same time, it argues that the inadvertence requirement itself is analytically unsound and should be rejected. It may be that the Government would not consider the inadvertence requirement unsound if courts applied it only to "mere evidence" and not to what Judge Learned Hand once graphically described as *caput lupi, see United States v. Old Dominion Warehouse, Inc.*, 10 F.2d 736, 738 (2d Cir. 1926). It certainly could be argued that this is what Justice Stewart intended. However, because the Government does not choose to make the argument, we will not reach out to decide it.

▆ On the other hand, we have considered and find most persuasive the Government's contention that the postal inspectors did not "know" in advance that they would find the additional cosmetics in plain view and that, in the absence of this knowledge, their discovery was inadvertent. "What *Coolidge* proscribes is an anticipated discovery, where the police know in advance the location of the evidence and intend to seize it." *United States v. Bolts*, 558 F.2d 316, 320 (5th Cir.), *cert. denied*, 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed. 290 (1977); *see Mapp v. Warden*, 531 F.2d 1167, 1172 (2d Cir.), *cert. denied*, 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed.2d 592 (1976). For the Government to be charged with advance knowledge, it must at the very least have had probable cause to believe that the additional cosmetics would be found. *United States v. Hare*, 589 F.2d 1291, 1293–96 (6th Cir. 1979); *United States v. Marshall*, 452 F.Supp. 1282, 1287 (S.D.Fla.1978); *United States v. Winston*, 373 F.Supp. 1005, 1007 (E.D.Mich. 1974), *aff'd*, 516 F.2d 902 (6th Cir. 1975). Mere expectation or suspicion that discovery would occur does not preclude application of the plain view doctrine. *United States v. Hare, supra*, 589 F.2d at 1294; *United States v. Worthington*, 544 F.2d

1275, 1280 n.4 (5th Cir.), *cert. denied*, 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 72 (1977); *United States v. Cushnie, supra*, 488 F.2d at 82.

This was not the rule that the district judge followed. He held instead that inadvertence must be determined on the basis of what the government agents expected to find. Moreover, he refused to incorporate the more stringent requirements of "probable cause" into his definition of "expectation" unless the police "have tendered to a detached and neutral magistrate all evidence and information in their possession so that, prior to the search, the magistrate will have been able to make the relevant determination as to probable cause." This was error.

Police officers applying for search warrants are not required to provide a magistrate with all the information in their possession. *United States v. Charlton*, 409 F.Supp. 1327, 1330–31 (E.D.Tenn.1975), *aff'd*, 565 F.2d 86 (6th Cir. 1977), *cert. denied sub nom. Jacek v. United States*, 434 U.S. 1070, 98 S.Ct. 1253, 55 L.Ed.2d 773 (1978); *United States v. Egorov*, 222 F.Supp. 862, 866 (E.D.N.Y.), *petition for cert. dismissed under Rule 60*, 375 U.S. 926, 84 S.Ct. 329, 11 L.Ed.2d 261 (1963). Where, as here, the police "know" or "have probable cause to believe" with respect to one shipment only, a requirement that they tender all evidence and information in their possession concerning possible other shipments is both impractical and unnecessary. A magistrate is not going to give them more searching authority than they seek, and wise police will not ask for more than that to which they are entitled. If the district court is suggesting that the police must request unlimited search and seizure in every case, even though they do not believe it is justified, we find the suggestion to be without merit. In summary, we hold that the inadvertence requirement of the plain view doctrine was satisfied in this case, and the district court erred in holding to the contrary.

In view of the Government's willingness to limit its claim of rightful seizure to the

merchandise found in the hall closet and under the cellar stairs, we find no merit in appellees' alternative contention that the search exceeded the scope of the warrant.

With respect to the merchandise seized in the hall closet and under the cellar stairs of the Liberti residence, the orders appealed from are reversed. As to the remaining merchandise, they are affirmed.

NEWMAN, Circuit Judge, concurring in the result:

The "inadvertence" qualification to the doctrine of "plain view" seizures was endorsed in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), by only four Justices and was also rejected as unsound in that same case by four Justices. The uncertain status of the "inadvertence" notion has been noted by this Court, see *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975); *United States v. Santana*, 485 F.2d 365, 369–70 (2d Cir. 1973), and others, see, *e. g., United States v. Bradshaw*, 490 F.2d 1097, 1101 n.3 (4th Cir. 1974). I would not deem it the law of the land, and I prefer not to resolve my own doubts about the doctrine in a case like this one, which does not require its acceptance or rejection.

Even as announced in Justice Stewart's plurality opinion in *Coolidge*, the "inadvertence" qualification has no application to stolen goods, 403 U.S. at 471, 91 S.Ct. 2022. The goods at issue in this case were stolen, and that is sufficient reason for me to reject the "inadvertence" qualification here and reverse the suppression order, whether or not the Government chooses to advance this ground.

The majority prefers to rest decision on the ground that a "plain view" seizure of an item not covered by a search warrant is "inadvertent" when officers *lack* probable cause to search for and seize that item. That approach creates the anomaly that a householder's interest in protecting his goods from seizure is made to turn on his ability to prove that the officers *had* probable cause, while the officers' authority to seize depends on their successful *disclaimer* of probable cause. The reversal of traditional roles on the issue of probable cause suggests that making "inadvertence" turn on the absence of probable cause may be unsound. Moreover, this approach places the householder in the position of probing for law enforcement information and thereby risking the integrity of continuing criminal investigations in order to prove the presence of probable cause, a matter normally not within his knowledge. The best that can be said for making inadvertence turn on the absence of probable cause is that it creates less of an anomaly than the District Court's approach. The latter obliges officers seeking a search warrant to delay their activity and occupy the time of the magistrate while they report all information in their possession so that the magistrate can decide whether they have probable cause to seize any items in addition to those for which they seek a warrant.

Perhaps these anomalies put in issue the basic soundness of the "inadvertence" qualification. In any event, whether there was "inadvertence" in this case need not be determined since the doctrine, even if valid, does not apply to stolen goods. For that reason, I concur in the result.