In re Property Seized from Manuel
Becker. Petition of Manuel
BECKER, Petitioner.

Magistrate No. 80–2051–M–01.

United States District Court,
D. Kansas.

June 3, 1981.

F. Russell Millin, Sandra C. Midkiff, Burke, Hoffman & Millin, Kansas City, Mo., for petitioner.

John O. Martin, Asst. U.S. Atty., Kansas City, Kan., for defendant.

## MEMORANDUM & ORDER

SAFFELS, District Judge.

This matter comes before the Court upon petitioner's motion for the return of seized property and the suppression of evidence. In support of this motion, petitioner contends that the property was seized against his will, that certain of the items seized were not authorized by the search warrant, that the search warrant did not specifically describe the location of the search, and that the officers participating in the search were without jurisdiction. In his supporting brief, petitioner further alleges that the affidavit in support of the application for the search warrant was inadequate.

On October 8, 1980, the United States Magistrate authorized a search warrant for petitioner's residence. The search warrant authorized a search of the premises known as:

"4016 West 94th Street, Overland Park, Kansas; an individually numbered apartment unit in the Kenilworth Apartment Complex, prominently displaying No. 4016, fronted with brown shake shingles and stone facade."

The property to be seized was listed on an attached exhibit as:

"Two Cloisenne figurines: (1) a horse's head, and (2) a horse's body.

"A 10″ bronze statue depicting a man playing a cello.

"A bronze statue depicting an Indian woman in seated position.

"Boehm sculpture depicting an ape.

"A Sybis porcelain, approximately 8″ tall, depicting birds on a tree.

"Two jade plaques, approximately 18″ x 15″, depicting flowers."

On October 9, 1980, the date the search was executed, six of the eight objects listed were seized, as were approximately forty other art objects.

Petitioner's allegation can be divided into two categories, those that attack the validity of the search warrant and those that challenge the seizure of articles not listed in the search warrant. We will first discuss the validity of the search warrant.

Petitioner questions the sufficiency of the affidavit supporting the issuance of the search warrant. In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court established a two-prong test for determining whether an affidavit consisting of statements of an informant establishes probable cause for the issuance of a search warrant. The Court stated:

". . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable.' " 378 U.S. at 114, 84 S.Ct. at 1513.

The first prong relates to whether the informant's information in the particular case is accurate. *United States v. Schauble*, 647 F.2d 113 (No. 79–2022, 10th Cir., April 14, 1981). The information must be detailed so that the magistrate knows that he is relying on "something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969). The second prong goes to the past reliability of the informant. *See United States v. Hittle*, 575 F.2d 799, 801 (10th Cir. 1978).

After reviewing the affidavit which supported the magistrate's issuance of the search warrant, we find that both prongs of the test have been satisfied. Two unidentified informants and one identified informant supplied personal information concerning the location of the items listed in the search warrant. The identified informant was Marvin Gabb, who told the affiant that he was a professional shoplifter. Gabb further stated that he personally sold stolen merchandise to petitioner on a continuous basis, and that he had observed in petitioner's home that merchandise and other stolen merchandise he had sold to others. (See Affidavit of James K. Weber, October 8, 1980, p. 3.) The second source stated to affiant that she was personally present when Gerrold Stevens, operator of a clothing store, purchased stolen property from Marvin Gabb and other interstate shoplifters, and she knew that petitioner had purchased stolen property from Gerrold Stevens. (See Affidavit of James K. Weber, October 8, 1980, p. 2.) As in *Schauble, supra,* personal observation and knowledge was the basis of the information provided in the instant case by the identified informant and the second source. While the information of the first source standing alone would not justify the issuance of a search warrant, here it adds to the reliability of the other information. Sufficient underlying circumstances were presented in such detail that the magistrate could determine that the informant had a reasonable basis

for his belief. Petitioner has not questioned the reliability of the informant. Our review of the affidavit leads us to conclude that sufficient facts were presented to the magistrate that he could find that the informant was a reliable source. Therefore, we hold that the affidavit was sufficient to support the issuance of the search warrant.

■ Petitioner has further attacked the search warrant and the search which ensued in two areas. He alleged in his motion that the warrant did not specifically describe the location of the search. However, in his brief, he appears to have abandoned this issue. Evidence presented at the hearing indicated that the search warrant was sufficient in its specificity of the location to be searched.

■ Petitioner further contends that the search was defective in that it was executed by officers other than federal agents. We believe that this argument lacks merit. Under federal law,

"... a search warrant may be executed by (1) the person to whom the warrant is directed; (2) any officer authorized by law to execute search warrants; or (3) some other person aiding a person under (1) or (2) who is present and acting in the execution of the warrant...." *United States v. Martin*, 600 F.2d 1175, 1182 (5th Cir. 1979).

The search warrant here was directed to "any special agent of the Federal Bureau of Investigation, or other authorized law enforcement officer." The search warrant was served by Edward A. Skelly, Jr., a special agent of the Federal Bureau of Investigation. He was assisted by Special Agent Trammel of the F.B.I., three Kansas City, Missouri police officers, and an F.B.I. photographer. Petitioner, who admits that the F.B.I. agents were present, has objected to the presence of the Kansas City, Missouri Police Officers, who he contends were without jurisdiction. However, these officers were clearly persons aiding a person authorized to execute the search warrant who was present and acting in the execution of the warrant. Therefore, the motion to return the property or to suppress evidence

on the basis that the search warrant was invalid will be denied.

■ Petitioner's remaining arguments challenge the seizure of articles not listed in the search warrant. The "plain view" doctrine justifies the seizure of items not listed in a warrant, but discovered inadvertently during the execution of a valid warrant. The doctrine was discussed in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971):

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." 403 U.S. at 466, 91 S.Ct. at 2038.

In this case, it has been established that the officers had a prior justification for the intrusion based upon the search warrant which we have upheld as valid. The only questions that remain are whether the officers discovered the seized articles inadvertently and knew their incriminating nature.

The inadvertence requirement was discussed under similar facts in *United States v. Liberti*, 616 F.2d 34 (2nd Cir.), *cert. denied* 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980). There, postal inspectors seized boxes of stolen goods during an authorized search of a home for a brown box containing Estee Lauder cosmetics. Defendant sought to have the evidence suppressed be-

cause the facts indicated that the inspectors' discovery of the seized items was anticipated rather than inadvertent. However, the Second Circuit Court of Appeals rejected this contention. They stated:

"On the other hand, we have considered and find most persuasive the Government's contention that the postal inspectors did not 'know' in advance that they would find the additional cosmetics in plain view and that, in the absence of this knowledge, their discovery was inadvertent. 'What *Coolidge* proscribes is an anticipated discovery, where the police know in advance the location of the evidence and intend to seize it.' *United States v. Bolts*, 558 F.2d 316, 320 (5th Cir.), *cert. denied*, 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977); *see Mapp v. Warden*, 531 F.2d 1167, 1172 (2d Cir.), *cert. denied*, 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed.2d 592 (1976). For the Government to be charged with advance knowledge, it must at the very least have had probable cause to believe that the additional cosmetics would be found. *United States v. Hare*, 589 F.2d 1291, 1293–96 (6th Cir. 1979); *United States v. Marshall*, 452 F.Supp. 1282, 1287 (S.D.Fla.1978); *United States v. Winston*, 373 F.Supp. 1005, 1007 (E.D.Mich.1974), *aff'd*, 516 F.2d 902 (6th Cir. 1975). Mere expectation or suspicion that discovery would occur does not preclude application of the plain view doctrine. *United States v. Hare, supra*, 589 F.2d at 1294; *United States v. Worthington*, 544 F.2d 1275, 1280 n.4 (5th Cir.), *cert. denied*, 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 72 (1977); *United States v. Cushnie, supra*, 488 F.2d at 82." 616 F.2d at 37.

■ The agents and officers who conducted the search of petitioner's home attended a briefing prior to the search where they were provided information on other objects of art which had been stolen. Thus, when they undertook the search of petitioner's home, the agents and officers may have had some suspicions that other allegedly stolen art objects would be present. However, while it may be a fine line, we do not believe that this briefing indicated that the agents had probable cause to believe that specific items of stolen art would be found in the home. As such, the agents and officers could not be charged with advance knowledge which would violate the inadvertence requirement.

■ The question remains whether the searching officers recognized the incriminating nature of the art objects. For an object to be "incriminating" for constitutional purposes, the seizing authority need only have reasonable or probable cause to believe that the object is evidence of a crime. *United States v. Ross*, 527 F.2d 984 (4th Cir. 1975), *cert. denied* 424 U.S. 945, 96 S.Ct. 1414, 47 L.Ed.2d 351 (1976); *United States v. Sedillo*, 496 F.2d 151 (9th Cir.), *cert. denied* 419 U.S. 947, 95 S.Ct. 211, 42 L.Ed.2d 168 (1974). Here, the investigation which led to the search of petitioner's home involved identifying numerous items of stolen art. The agents and officers executing the search were briefed on the descriptions of known stolen art. Thus, when the agents seized articles which fit the descriptions of stolen art objects, they were acting with reasonable cause to believe that the items were evidence of a crime.

Accordingly, we find that the seized articles not listed in the search warrant were incriminating objects which came into plain view of the agents who were executing a valid search warrant.

■ After reviewing the evidence and finding that the objects were seized in compliance with constitutional safeguards, we reject petitioner's argument that the search was a general exploratory search. Petitioner argues the agents searched all the rooms of his apartment, as well as drawers, closets and the basement storage locker, indicating the search was a "fishing expedition." A study of the search receipts indicates that only six of the eight items in the search warrant were found. The objects to be seized could have reasonably been expected to be in any of the places petitioner has indicated were searched. Likewise, it is not unreasonable that the agents continued to search the apartment until they determined

that the two remaining items were not present. The items seized that were not listed on the search warrant were similar to the listed objects. Thus, it is also reasonable that the agents were searching in the areas where they found the unlisted objects.

IT IS BY THE COURT THEREFORE ORDERED that petitioner's motion for the return of seized property and the suppression of evidence is hereby denied.